UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 18-cv-62086 DIMITROULEAS

DEBORAH LAUFER, Individually
 Plaintiff

v.

THE CATO CORPORATION, a Delaware
Corporation dba Cato Fashions,
 Defendant
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'
MOTION TO DISMISS [DE 50]**

Plaintiff, DEBORAH LAUFER ("Laufer" or "Plaintiff"), by and through her undersigned counsel, hereby serves her Response in Opposition to Defendant The Cato Corporation ("Cato")'s Motion to Dismiss (DE 18) and in support thereof states as follows:

**I.  INTRODUCTION**

Laufer is visually impaired to the extent that she is unable to read computer materials and/or access and comprehend internet website information without Screen Reader Software ("SRS"). Defendant owns and operate a series of clothing stores throughout the State of Florida and also owns, operates and/or maintains a website in conjunction with those stores. Laufer was unable to fully enjoy and access Defendant' website, www.catofashions.com ("the website"), and filed this action seeking injunctive relief pursuant to Title III of the Americans With Disabilities Act, 42 U.S.C. §12181, et seq. ("ADA"). In response to Plaintiff's Complaint (DE 1), Defendant filed its Motion to Dismiss Plaintiff's Complaint (DE18) ("the Motion").

In the Motion, Defendant is asking the Court to rule that an ADA claim based on website inaccessibility must allege that the website specifically impedes the ability to access the physical location. This argument is not supported by the decisions and rulings of this court, as more

1

particularly described below; accordingly, for the reasons that follow, Defendant's motion must be denied. By way of summary, Laufer's Complaint does indeed satisfy the requirements of this Court by sufficiently alleging how the inaccessible website impeded Laufer's full and equal enjoyment of the goods, services, privileges, advantages and accommodations of Defendant's stores. By way of further argument, however, Laufer submits that there is simply no such requirement. Indeed, the Eleventh Circuit Court decision upon which courts in this District premise such a requirement involves an entirely different section of the ADA with substantially different language.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) Claim for Relief, has liberal pleading requirements. Pursuant to this Rule, a complaint must contain a short and plain statement showing that the pleader is entitled to relief sufficient to give the fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Detailed factual allegations are not needed. *Id*. Defendant can more properly determine the additional details sought through discovery, rather than requiring it be plead in the Complaint. *See also Laufer v. J. Lindeberg, Inc*., No. 16-22966, ECF No. 23, at *3 (S.D. Fla. Oct. 17, 2016) (Williams, J.) (finding that a plaintiff stated a claim that the defendant's website violated the ADA because the plaintiff alleged that the website was inaccessible to blind individuals and allowed customers to purchase the defendant's clothing online and search for store locations). Additionally, when ruling on a motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 127 S. Ct. 2197, 551 U.S. 89 (2007). Defendant's Motion to Dismiss falls short of these established requirements, and therefore its Motion must be denied.

## III. MEMORANDUM OF LAW

A. **Plaintiff Has Satisfied Notice Pleading Requirements**

In this case, Laufer's Complaint contains the following allegations:

The Plaintiff is blind, and unable to read computer materials or access and comprehend internet website information without software specially designed for the visually impaired. She utilizes a popular SRS which is utilized worldwide (DE 1 par 2).

Defendant owns, leases, leases to, or operates a place of public accommodation as defined by the ADA and the regulations which implement it. The Defendant's place of public accommodation is a chain of clothing stores throughout Florida. Defendant owns, operates, leases, or maintains a website which is an extension of, and is complementary and supplemental to its place of public accommodation. The website serves as a gateway to the stores by providing information about the goods, services, accommodations, privileges, benefits and facilities available to non-disabled individuals (DE 1 par. 4, 5, and 10).

Through the website, the Defendant extends its public accommodation into individual persons' homes and personal computers, and provides access to the goods, services, facilities, privileges, advantages or accommodations of its place of public accommodation (DE 1, par 8).

The Plaintiff attempted to access or utilize the Defendant's website, but was unable to because numerous portions of the website are inaccessible to the visually impaired, as they do not interface with, and are not readable by, SRS. As a result, Plaintiff was deprived access to the goods, services, facilities, privileges, advantages or accommodations available to non-disabled patrons of the stores (DE 1, par. 10).

Plaintiff continues to attempt to use the website and has plans to use the website in the near future, but cannot do so as long as the violations described continue to exist (DE 1, par. 12, 13).

The allegations described above satisfy the court requirements and clearly establish how the inaccessible website impeded Laufer's full and equal enjoyment of the goods, services, privileges, advantages and accommodations of Defendant's physical stores, and the Defendant's discriminatory treatment of disabled individuals. The 11th Circuit has determined that a complaint which alleges a website denies blind people the ability to enjoy the goods, services, privileges, and advantages of a store (such as locating physical store locations and purchasing gift cards) has established a plausible claim for relief under the ADA, as it establishes the website is a service that facilitates the use of defendant's shops, which were places of public accommodation.  *Haynes v. Dunkin' Donuts, LLC*, 18-10373; 2018 WL 3634720 (11th Cir. July 31, 2018).

As shown above, the allegations of the Complaint meet the notice pleading requirements of Fed. R. Civ. P. 8 and the additional requirements of this Court.

**B.     Defendant Erroneously Suggests that the Complaint Fails to State a Cause of Action.**

### 1.     The ADA Applies to Websites

It is now relatively settled law that the ADA applies to websites. Title III of the ADA prohibits discrimination by public accommodations:

> "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations *of* any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. §12182 (a).  [Emphasis added].

Earlier court opinions holding that websites are covered focus primarily on the word "of" in the middle of the statute. For example, in *Nat'l Fed'n Of The Blind v. Target Corp.*, 452 F.Supp.2d 946, 953 (N.D. Cal. 2006), one court reasoned:

> [t]he statute applies to the services of a place of public accommodation, not services in a place of public accommodation. [Citation omitted.] To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute. [Citation omitted.] See also [Rendon v. Valleycrest Prods., 294 F.3d 1279, 1285 (11th Cir. 2002). ](holding that a process for selecting contestants for a game show that screened out the disabled was actionable under Title III even though the process occurred outside the premises of the public accommodation)

Thus, it is not necessary for a disabled plaintiff to allege or establish that a website is a place of public accommodation by itself. Rather, it is sufficient to allege and ultimately prove that the Defendant has a place of public accommodation and that the website at issue be among the "goods, services, facilities, privileges, advantages, or accommodations OF the place of public accommodation. In Target, the court characterized a website as a "service" of the place of public

accommodation. However, Laufer submits that a website falls equally under the definitions of "privileges, advantages, or accommodations[1]".

Recent decisions in the Eleventh Circuit make it clear that the ADA applies to websites. *See, e.g.* Haynes v. Hooters of Am., LLC, 893 F.3d 781 (11th Cir. June 19, 2018) (holding that a plaintiff could maintain an action for injunctive relief requiring a defendant to alter its website to make it accessible to, and usable by, individuals with disabilities to the full extent required by Title III of the ADA, despite prior similar claims); Haynes v. Dunkin' Donuts, *supra* (a website is a service that facilitates the use of defendant's shops, which are places of public accommodation; the ADA is clear that whatever goods and services defendant offers as part of its place of public accommodation, it cannot discriminate against people on the basis of a disability, even if those goods and services were intangible).

The Defendant's website is a place of public accommodation because it is a private entity that provides services which fall into the enumerated categories, is heavily integrated with Defendant' physical store locations, and operates as a gateway to the stores, all of which has been alleged in the Complaint. The website permits its patrons to obtain information about store locations, find items on clearance or sale, obtain gift cards and coupons per the viewer's choice, make purchases, place orders for delivery or pick up at a store of the viewer's choice, all of which are part of the goods, services, accommodations, privileges, benefits, and facilities available to its patrons.

---

[1] In this latter regard, "accommodation" appears twice in the same sentence in section 12182(a); namely "... accommodations of any place of public accommodation". Indeed, the statute itself creates a definitional distinction between "accommodation" and "public accommodation." The first reference groups "accommodation" with "goods, services, facilities, privileges [and] advantages." The second reference includes a qualifier: "place of public accommodation." The second reference can be interpreted as a physical location. The first reference, however, can not. The definition of "accommodation" can alternatively refer to either a physical location or "the providing of what is needed or desired for convenience." See, *Merriam-Webster Dictionary* definition of Accommodation. By making reference to an "accommodations *of* any place of public accommodation," Subsection 12182(a) clearly intends that "accommodation" has two separate meanings. When appearing in the phrase "place of public accommodation," it refers to a physical location. When it appears alone, however, it means, "the providing of what is needed or desired for convenience."

The website therefore provides the services of a "brick and mortar" store, no different than a "service establishment" of the type enumerated as a public accommodation. It must be noted that, under similar circumstances, the 11th Circuit in the *Dunkin' Donuts* matter held that the complaint stated sufficient facts to establish an allegation of a nexus between the defendant's website and its place of public accommodation. Since the website provides some of the services, privileges, benefits and accommodations provided by Defendant's physical stores, the website is a place of public accommodation as contemplated by the ADA and the Motion to Dismiss should be denied.

### 2. **Other Circuit Courts**

Some Circuit Courts have held that Title III of the ADA applies to more than just discrimination found in physical spaces. In *Carparts Distribution Center., Inc. v. Automotive Wholesaler's Ass 'n of New England, Inc.*, 37 F.3d 12 (1st Cir. 1994) the Court of Appeals for the First Circuit held:

> By including "travel service" among the list of services considered "public accommodations," Congress clearly contemplated that "service establishments" include providers of services which do not require a person to physically enter an actual physical structure. Many travel services conduct business by telephone or correspondence without requiring their customers to enter an office in order to obtain their services. . . To exclude this broad category of businesses from the reach of Title III and limit the application of Title III to physical structures which persons must enter to obtain goods and services would run afoul of the purposes of the ADA and would severely frustrate Congress's intent that individuals with disabilities fully enjoy the goods, services, privileges and advantages, available indiscriminately to other members of the general public.

*Carparts, supra,* at 19-20 (emphasis added).

In *Doe v. Mutual of Omaha Insurance Co.*, 179 F.3d 557 (7th Cir. 1999), the Court of Appeals for the Seventh Circuit held that

> the core meaning of [section 302(a) of Title III of the ADA], plainly enough, is that the owner or operator of a store, hotel, restaurant, dentist's office, travel agency, theater, Web site, or other facility (whether in physical space or in electronic space, that is open to the public cannot exclude disabled persons from entering the facility and, once in, from using the facility in the same way that the nondisabled do.

*Doe*, at 559 (internal citation omitted)(emphasis added). The same court held in *Morgan v. Joint Administrative Board, Retirement Plan of the Pillsbury Co. and American Federation of Grain Millers, AFL—CIO—CLC,* 268 F.3d 456 (7th Cir. 2001):

> The defendant asks us to interpret "public accommodation" literally, as denoting a physical site, such as a store or hotel but we have already rejected that interpretation. An insurance company can no more refuse to sell a policy to a disabled person over the Internet than a furniture store can refuse to sell furniture to a disabled person who enters the store. The site of the sale is irrelevant to Congress's goal of granting the disabled equal access to sellers of goods and services. What matters is that the good or service be offered to the public.

Morgan, at 459 (internal citations omitted).

### 3. **The Eleventh Circuit And District Court Interpretations**

In this District, courts have discussed the history of circuit court opinions ruling both in favor and against ADA coverage of websites and further addressed the 11th Circuit Court's ruling closest to the issue. See, e.g. *Haynes v. Interbond Corporation Of America*, 0:17-cv-061074-WPD, DE 44, pp. 9-10 (S.D. Fla. 10/16/2017); *Gil v. Winn-Dixie, Inc*., *supra*; *Laufer v. Bang & Olufsen Am., Inc*., 2017 WL 1957182 (S.D. Fla. Feb. 2, 2017).

In *Interbond*, one District Court described the law in the 11th Circuit as follows:

> The Eleventh Circuit has charted a middle path. *Rendon v. Valleycrest Productions, Ltd*., 294 F.3d 1279 (11th Cir. 2002), held that a telephone selection process that allegedly screened out disabled contestants from aspiring to compete on the show Who Wants To Be a Millionaire? was covered by Title III. In reaching this conclusion, *Rendon* reasoned that the ADA's plain text "reveals that the definition of discrimination provided in Title III covers both tangible barriers, that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, and intangible barriers, such as eligibility requirements and screening rules or discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges." Id. at 1283 (citations omitted).

Thus, the interpretation in this District that there must be a nexus between website discrimination and access to goods and services at a physical location is based on *Rendon*. This

interpretation, however, entirely misreads *Rendon*, the plain text of the statute, and the rules of statutory construction[2].

To begin, *Rendon* addressed an entirely different subsection of the ADA with critically different language. In *Rendon*, the Eleventh Circuit analyzed whether a telephone screening process for potential game show participants was covered by the ADA. Critically, this did not involve a claim under Section 12182(a). The Court did not characterize the telephonic screening process as either a good, service, privilege, facility, privilege, advantage or accommodation of a place of accommodation. Rather, it was a screening process, constituting "eligibility criteria" under subsection 12182(b)(2)(A)(i). This is an entirely different kind of claim. Subsection 12182(b)(2)(A)(i) defines discrimination as:

> the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations...
> (Emphasis added.)

In this provision, the statute clearly requires that the discriminatory practice found in the first phrase of the sentence cause a deprivation of an item set forth second half of the sentence. In other words, the statute required that the discriminatory screening process caused the person to be deprived "from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations".

In sum, the *Rendon* Court did not analyze whether the telephonic screening process was a good, service, privilege, facility, privilege, advantage or accommodation under Subsection 12182(a). Instead, the Court found it to be eligibility criteria covered by Subsection 12182(b)(2)(A)(i). With

---

[2] It must be noted that the decision in *Haynes v Dunkin' Donuts, LLC*, 18-10373; 2018 SL 3634720 (11th Cir. July 31, 2018) applied the *Rendon* analysis and held that the complaint satisfied it because it sufficiently alleged a nexus. Having found that a nexus was sufficiently established, the court did not address the argument that no nexus is required.

respect to the issue at hand, the two subsections stand in stark contrast. The nexus requirement found in Subsection 12182(b)(2)(A)(i) is not present in Subsection 12182(a).

In other words, a plain reading of Subsection 12182(b)(2)(A)(i) requires that the telephonic eligibility screening criteria prevent a disabled person "from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations". By stark contrast, a website is a service, privilege, advantage or accommodation in and of itself. All that is additionally required is that a place of public accommodation be associated. The comparison and contrast of the two subsections is as follows:

  A. Under Subsection 12182(b)(2)(A)(i) discussed in *Rendon*, the telephonic screening process of Rendon is an "eligibility criteria". If this is found to be discriminatory, it is only actionable if it further screens out disabled people from "from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations".

  B. Under Subsection 12182(a), a website of a place of public accommodation falls within the definition of service, privilege, advantage or accommodation. To be actionable, all that is required is that discrimination prevent him from its full and equal enjoyment.

Under the rules of statutory construction, a court must begin its analysis with the plain language of the statute and enforce it according to its terms. *Jiminez v. Quarterman*, 555 U.S. 113, 118 (2009) The court's first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Where the statute conveys a plain and unambiguous meaning, the court looks no further. *Rendon*, 294 F.3d at 1283. Most critically:

> "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."

*INS v. Cardoza—Fonseca*, 480 U.S. 421, 432 (1987).

This latter rule of statutory construction is dispositive. In one subsection, Congress inserted a nexus requirement. In the other subjection of the same statute, it inserted no such requirement.

This clearly means that Congress intended that there be NO nexus requirement in Subsection 12182(a).

Here, Congress imposed the requirement that discrimination in eligibility screening deprive a disabled person from full and equal enjoyment of goods, services, facilities, advantages, or accommodations..." Because, however, a website is already a good, service, facility, privilege, advantage, or accommodation, then no further nexus to a place of public accommodation is required.

In short, *Rendon's* nexus requirement is applicable only to discrimination under Subsection 12182(b)(2)(A)(i) and it is not applicable to Subsection 12182(a) because the statutory language is critically different[3].

### 4.    Additional Analysis of the Plain Language of Subsection 12182(a) Statute Proves That No Nexus Is Required

In addition to the reasons above, the plain language of Subsection 12182(a) plainly eliminates any nexus requirement. Again, the Subsection, in pertinent part, proscribes discrimination "...in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, **or** accommodations..." (Emphasis added.) Once it is established that a website is either a service, or a privilege, or an advantage, or an accommodation of a place of public accommodation, a plaintiff

---

[3] In *Access Now, Inc. v. Southwest Airlines Co*., 385 F.3d 1324, 1334-35(11th Cir. 2004), the Eleventh Circuit declined to issue any ruling on the applicability of Title III to websites on any matter broader than airlines, on the basis that the plaintiff's arguments had been narrow and that Title III has a specific exemption applicable to airlines. Indeed, the Circuit Court stated that: "...this case would shed little light even on Title III challenges to other airline web sites, because our ruling would necessarily be based on facts specific to the physical places owned and operated by Southwest Airlines." Id. The Circuit Court then stated, in dicta: "Title III's applicability to web sites -- either because web sites are themselves places of public accommodation or because they have a sufficient nexus to such physical places of public accommodation -- is a matter of first impression before this Court. Unfortunately, this case does not provide the proper vehicle for answering these questions."

who has been deprived full and equal enjoyment thereof is not required to allege or establish more. There is no second layer or additional deprivation, nexus or impediment required. For a court to additionally mandate that he also show that he was further impeded access to either a "good" or "facilities" is effectively to rewrite the Statute.  For example, a court ruling that a plaintiff must prove a nexus between the website discrimination he encountered and her access to goods or facilities at a physical location would essentially rewrite the Statute to say as follows: "... in the full and equal enjoyment of the goods or services or facilities **AND** privileges or advantages or accommodations."  Such an interpretation of law would require disabled plaintiffs to suffer discrimination under two enumerated categories - one from each side of the equation.  As the Circuit Court stated in <u>Houston v. Marod Supermarkets, Inc.</u>, 733 F.3d 1323, 1334 (11th Cir. 2013), "[w]e are not allowed to add or subtract words from a statute."

### 5.     A Plaintiff Need Not Visit Or Intend To Visit A Physical Location

Defendant also raises an argument regarding ties, visits and intention of visits to the Defendant' stores, in the past or in the future, alleging that allegations of future attempts at utilization of the website are insufficient unless a claimant demonstrates first that the website has impeded access to a physical location.  Any such notion runs far afield from cognizable law. "[T]he irreducible constitutional minimum of standing contains three elements." <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992). These elements are "(1) an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent; (2) a causal connection between the injury and the conduct complained of; and (3) the likelihood that a favorable decision will redress the injury."  In applying this analysis to structural ADA cases, many authorities in this District require that a plaintiff establish that he or she is in actual or imminent danger of again suffering discrimination by focusing on his or her likelihood of returning to the subject property. In such cases, the discrimination occurred at

11

the physical location. The physical location is where the discriminatory barriers are located and a plaintiff only encounters them when he or she visits that location.

By contrast, websites are an extension into people's homes. Therefore, the situs of any such discrimination occurs in the plaintiff's home, rather than in a physical store. Indeed, it defies all logic that a plaintiff would have to visit a store to encounter discrimination contained on the store's website. Therefore, it is not necessary that the plaintiff go to a physical store, or even intend to visit a physical store. The issue is whether he or she will again encounter discrimination and thus satisfy the "actual or imminent" harm requirement of <u>Lujan</u>. That encounter with discrimination occurs in the plaintiff's own home. Indeed, the notion that Plaintiff must visit a physical store before she can again encounter discriminatory conditions contained in the Defendant's website defies logic. Because the issue is whether the Plaintiff will again encounter discrimination the next time she visits the <u>website</u>, whether she intends to physically a store or not is completely irrelevant. In <u>Marod Supermarkets</u>, *supra*, at 1333, the Eleventh Circuit held that the "client or customer" requirement applies only to discrimination defined under Subsections 12182(b)(1)(A)(I)-(iii), and does not apply to discrimination under Subsection 12182(a). Therefore, to state a claim under Subsection 12182(a), it is not necessary that the Plaintiff have any ties, or even an intent to visit, any physical location.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss must be denied.

WHEREFORE Plaintiff, Deborah Laufer, respectfully requests this Court enter an Order: (1) denying Defendant' Motion to Dismiss Plaintiff's Complaint [DE 18]; and (2) entering any further relief the Court deems equitable and just.

Dated this 23rd day of November, 2018.

>Respectfully Submitted,
>
>Attorneys for Plaintiff
>
>Kathy L. Houston, Esq., Of Counsel
>THOMAS B. BACON, P.A.
>15321 S. Dixie Highway, Suite 205
>Miami, FL 33157
>Tel: (305) 420-6609 – Fax (786) 441-4416
>Email: khouston@houstonlawfl.com
>and tbb@thomasbaconlaw.com
>
>By: /s/ Kathy L Houston
>Kathy L. Houston, Esq.
>Florida Bar No: 56042

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I hereby certify that the foregoing document is being served this 23rd day of November, 2018, on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

### SERVICE LIST

| | |
|---|---|
| Thomas B. Bacon, Esq. | Jennifer T. Williams, Esq. |
| Florida Bar No. 139262 | Florida Bar No. 0174203 |
| Email: tbb@thomasbaconlaw.com | Email: jtwilliams@cozen.com |
| THOMAS B. BACON, P.A. | COZEN O'CONNOR |
| 644 North McDonald Street | 200 S. Biscayne Blvd., Suite 3000 |
| Mt. Dora, FL 32757 | Miami, FL 33131 |
| Tel. 954-478-7811 | Tel. 786-704-5944 – Fax 786-220-0207 |
| | |
| Attorneys for Plaintiff | Attorneys for Defendant |
| Via CM/ECF | Via CM/ECF |

>/s/ Kathy L. Houston
>Kathy L. Houston, Esq.